IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TU ANH NGUYEN AND HIEU MINH LE,<br><br>Defendants. | 1:19-cr-00004-JAJ-HCA<br><br>REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS |

This matter is before the Court on Defendant Le's March 6, 2020, Motion to Suppress Evidence. [Dkt. No. 104]. Defendant Nguyen joined in the Motion. [Dkt. No. 105]. The Government resisted the Motion to Suppress. [Dkt. No. 109]. The Court held an evidentiary hearing on the motion on September 3, 2020. Defendant Le waived personal appearance at the hearing [Dkt. No. 136] and was represented by Stuart Dornan. Defendant Nguyen also waived personal appearance at the hearing [Dkt. No. 133] and was represented by Assistant Federal Public Defender Michael Maloney. The Government was represented by Assistant United States Attorney Shelly Sudmann. At the end of the hearing, the Government requested that the record be kept open to allow for supplemental information to be filed with the Court. The Court agreed to hold the record open and on September 10, 2020, the Government filed additional written evidence [Dkt. No. 140] supplementing the record.

In their Motion to Suppress, Defendants Le and Nguyen challenge two warrantless traffic stops in different states. The first contested stop occurred on Interstate 20 on November 2, 2018, in Mississippi ("Mississippi stop"), when Flowood Police Officer and Scott County Sheriff's Special Deputy Jason Johns stopped a white Honda SUV driven by Le, with Nguyen as a passenger. The second challenged stop occurred on March 1, 2019, on Interstate 80 near Lincoln,

Nebraska ("Lincoln stop"), when Lincoln Police Officer John Hudec stopped a Toyota Tundra pulling an enclosed trailer driven by Le, with Nguyen as a passenger. Defendants Le and Nguyen contend that the searches subsequent to each stop violated their rights under the Fourth and Fourteenth Amendments of the United States Constitution. The Government contends that each stop and the subsequent searches were legal.

Sergeant Jason Johns, Officer John Hudec, and Officer Jason Mayo all testified at the hearing. The court received exhibits 1 through 4 from the Government. Defense counsel cross-examined the Government's witnesses. On September 10, 2020, the Government supplemented the record. [Dkt. No. 140]. This case was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b) on August 14, 2020.

## I.  FINDINGS OF FACT

### a. Mississippi Stop

On November 2, 2018, at approximately 1:00 a.m. Scott County Sheriff's Deputy Jason Johns was sitting stationary on I-20 near the 92-mile marker in Mississippi observing westbound traffic. It was raining that morning. Officer Johns observed a white SUV traveling westbound driving at a high rate of speed. After pacing the SUV driving at 80 mph in a 70-mph zone, Officer Johns initiated a traffic stop of the white SUV, driven by Defendant Le. Nguyen was a passenger in the vehicle. Both Le and Nguyen are Vietnamese. When Officer Johns spoke with Le about speeding at 80 mph, Le admitted that he had been speeding (Le did not think he was going 80, only 75 [Dkt. 147 (Tr.) 15]). Officer Johns obtained Le and Nguyen's identification and ran criminal checks on both. After the checks were completed, Officer Johns requested that Le step out of the vehicle while the traffic stop was completed, which Le did. Officer Johns advised Le that he was issuing a warning for his speeding violation. Officer Johns asked Le several questions

about his trip and the passenger in the vehicle. Le indicated that he had flown from Washington to Texas, where he met Nguyen. The two then drove from Texas to Alabama in the white SUV owned by Nguyen to visit a sick uncle who had a tumor. After a brief one-day visit with the uncle, Le and Nguyen were now traveling back to Texas. Le first indicated that Nguyen was his cousin but then later said Nguyen was Le's brother.

Deputy Johns also spoke to Nguyen. Although Nguyen spoke limited English, he understood and answered Officer Johns' questions in English. Nguyen stated that he was the owner of the SUV and that it was a 2018 model. Nguyen stated they were returning to Texas from Alabama where they had briefly visited a sick uncle. Nguyen was unable to indicate what was wrong with his uncle. Nguyen said he and Le were brothers but was unable to explain why they had different last names. Officer Johns was suspicious of Le and Nguyen's stories. Based on the totality of the circumstances, Officer Johns believed that criminal activity was afoot.

Officer Johns asked Nguyen if he could search the vehicle to which Nguyen responded "yes." Officer Johns then asked Le if he could search the vehicle. Officer Johns interpreted Le's response as a refusal of consent. Officer Johns then asked Le if there was a large sum of money or anything illegal in the vehicle. Officer Johns observed that Le's demeanor changed (voice pitch changed and he appeared nervous) when asked this stimulus question.

Officer Johns returned to his vehicle and retrieved his certified drug-detection dog (Archie). Archie performed a free air sniff around the vehicle. Based on the dog's behavior changes, Officer Johns noted that Archie alerted to the presence of controlled substances near the rear of the vehicle. Armed with the dog's response as probable cause, Officer Johns searched the vehicle. In the rear hatch, he located two cardboard boxes.  Le indicated that he did not know what was inside the boxes. Deputy Johns opened the boxes and found around $110,000 in United States

currency and several boxes of tetrahydrocannabinol ("THC") vape pens. Both Le and Nguyen disclaimed the cash.

Once Archie alerted, Officer Johns admitted that Le and Nguyen were not free to leave. Officer Johns did not provide a *Miranda* warning to either Le or Nguyen. Officer Johns did not question Le and Nguyen after he commenced the search of the vehicle. Le and Nguyen were transported to the Sheriff's department and were given *Miranda* warnings by the Sheriff's department investigator.

   b. **Lincoln Stop**

### 1. Officer Hudec's traffic stop of the pickup

On March 1, 2019, Officer Hudec was patrolling Interstate 80 near Lincoln, Nebraska, when he stopped a pickup truck with Washington plates pulling a goose neck trailer traveling east bound and driven by Defendant Le, in which Defendant Nguyen was a passenger. Officer Hudec stopped Le's vehicle because he believed that the vehicle was following an enclosed box truck trailer too closely in violation of Neb. Rev. Statute § 60-6, 140. To assist in making this determination, Officer Hudec clocked the distance between Le's vehicle and the truck he was following in seconds using a stopwatch. Using the stopwatch method, Officer Hudec concluded that Le was maintaining a distance of less than two seconds between his vehicle and the truck. Officer Hudec initiated the traffic stop because he felt that distance between the two vehicles was not a reasonable and prudent driving distance for safe driving.

Once Le pulled his vehicle to the side of the road, Officer Hudec approached the passenger side of the vehicle. Officer Hudec noticed religious paraphernalia hanging from the rearview mirror (which he identified as a possible indicator of criminal activity), multiple cell phones in the center console, and Nguyen also was holding a cell phone that he was using to record the

4

interaction. In the back seat of the vehicle, Officer Hudec noticed a small amount of luggage, not consistent with an extended trip. He also noticed that the trailer was locked with three large locks.

Officer Hudec advised Le of the traffic violation and requested that Le return to the patrol car, which Le did. In response to questions, Le indicated that the trailer was empty and was being driven to New Hampshire to pick up antiques. Le indicated he had locks on the trailer to keep people honest. With respect to the multiple cell phones, Le indicated that he used the cell phones to play games. Defendant Le also indicated that he had not been cited or arrested for any misdemeanors or felonies, which was not true. Defendant Le identified Nguyen as a friend.

Officer Hudec described Le as standoffish, confrontational with the questioning and recording into a cell phone during the interaction, which Hudec described as unusual compared to others he has stopped for traffic violations. Even after Officer Hudec told Le that he would be issued a warning, Hudec felt Le remained confrontational.

Officer Hudec had a more limited conversation with Nguyen. In response to questions, Nguyen stated they were traveling to New Hampshire to pick up many chairs. Officer Hudec indicated that Nguyen either did not have good English skills or he wanted to present as if he did not have good English skills, but Nguyen did respond appropriately to Officer Hudec's questions.

After Officer Hudec issued a warning to Le for the violation, and because Officer Hudec had completed the investigation for the basis for the initial stop, he advised Le that he was free to go. Officer Hudec then received information from his criminal history check advising that Le had a criminal history and had been arrested in Iowa on narcotics charges. Upon receiving the criminal history information, Hudec asked Le if he would consent to a search of the vehicle and trailer. Le declined to give consent. Hudec then asked Le if he would allow a narcotics K-9 to do an exterior search of the vehicle. Le again declined to give consent. At that point, Hudec advised Le that he

was detained and not free to leave. Hudec believed that based on the totality of the circumstances, he had reasonable suspicion that criminal activity was occurring. Sergeant Jason Mayo, whom Hudec previously had called to the scene, then immediately deployed his K-9 partner to do an exterior sniff search of the vehicle. The dog alerted to the trailer near the trailer hitch area. The officers then performed a probable cause search of the trailer and vehicle. Only empty shipping boxes were located in the trailer. A THC vape pen was found in luggage in the vehicle and banded United States currency was found in a bank bag in the vehicle. Officer Hudec did not read Le his *Miranda* rights at the traffic stop prior to the search of the vehicle and trailer. Officer Hudec wrote Le a citation for possession of the THC cartridge.

## II.   CONCLUSIONS OF LAW

### a. Mississippi Stop

#### 1. Officer Johns' traffic stop of the SUV

"A violation of a traffic law, even a minor violation, is sufficient probable cause to support a stop." *United States v. Miller,* 915 F.3d 1207, 1209 (8th Cir. 2019) (citing *United States v. Fuse*, 391 F.3d 924, 927 (8th Cir. 2004)). When an officer has a reasonable suspicion or probable cause to stop for a traffic violation, the officer's subjective intent is irrelevant. *United States v. McLemore,* 887 F.3d 861, 864 (8th Cir. 2018) (quoting *United States v. Fuehrer*, 844 F.3d 767, 772 (8th Cir. 2016) ("[A]ny ulterior motivation on the officer's part is irrelevant."), *cert. denied*, 137 S. Ct. 2710 (2017)). In this case, Officer Johns stopped the vehicle because he observed that the car was speeding. Defendant Le admitted to speeding (he believed he was going 75 mph in a 70-mph zone). This was a violation of law. The speeding violation was sufficient probable cause for Officer Johns' initial stop.

### 2. The canine sniff of the vehicle

Based on his conversations with Le and Nguyen, Officer Johns suspected that they were being deceptive about their trip and their relationship. Officer Johns' suspicions were based in part on Le's changing story as to his relationship with Nguyen (first described as cousins and then brothers), Le's demeanor and changing voice pitch when asked in response to questions from Officer Johns, and Nguyen's lack of knowledge about his uncle's condition and his inability to explain why he and Le had different last names if they were brothers. Officer Johns also found the quick turn-around of the trip and Le's unusual travel itinerary to add to the suspicious nature of the situation. Based on the totality of the circumstances, Officer Johns developed a reasonable suspicion that illegal activity was occurring.

Officer Johns then asked Nguyen if he could search the vehicle. Nguyen responded affirmatively. Officer Johns also asked Le if he would consent to a search of the vehicle. After Le responded by asking if Johns needed a paper to conduct such a search, Officer Johns interpreted Le's response to be a refusal of consent. Officer Johns immediately retrieved his certified K-9 Archie from the patrol car and conducted a free air sniff of the vehicle. Based on his training and eleven years as Archie's handler, Officer Johns observed that Archie's behavior constituted an alert to the presence of drugs. Defendants contend that Archie was excited and barking when he was in the patrol car and that Officer Johns gave him a command to calm down when he started the search. The Court does not find this canine behavior to nullify the dog's alert. The K-9 sniff did not violate defendants' Fourth Amendment rights.

### 3. The probable cause search of the vehicle

Once Archie alerted, Officer Johns had probable cause to search the vehicle. A defendant "cannot overcome the presumption of probable cause that attaches when a well-trained dog gives an alert." *United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir.), 577 U.S. 859 (2015). Despite Defendants' suggestion that Archie did not perform a full indication of an alert and that he may have in the past alerted when no drugs were found, the Court finds and concludes that Archie was certified to alert to the presence of drugs and did alert when conducting the free air sniff of the vehicle. *See, e.g., United States v. Holleman*, 743 F.3d 1152, 1156-58 (8th Cir.) (finding that a dog's alert, even without a "full indication," was sufficient to establish probable cause), *cert. denied*, 573 U.S. 953 (2014); *see also Florida v. Harris,* 568 U.S. 237, 248 (2013) ("The question . . . . is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. A sniff is up to snuff when it meets that test."). Officer Johns' search of the vehicle and the boxes within it was reasonable under the Fourth Amendment. *See Carroll v. United States*, 267 U.S. 132, 160-62 (1925) (establishing an "automobile" exception to the warrant requirement); *United States v. Murillo-Salgado*, 854 F.3d 407, 417-18 (8th Cir.) (finding that probable cause to search entire vehicle for contraband justifies searching any place that could conceal contraband), *cert. denied*, 138 S. Ct. 245 (2017). Suppression of the cash and THC vape pens found in the vehicle is not appropriate.

### 4. *Miranda* issue

Defendants contend that Officer Johns' questions to each defendant about the contents of the boxes found in the vehicle should be suppressed in violation of their *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). *Miranda* warnings are required before custodial

interrogations. In general, a suspect is not in custody during a routine traffic stop. *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) ("[Similar to a *Terry* stop, t]he . . . . noncoercive aspect of ordinary traffic stops prompt us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda."). The Court finds and concludes that Defendants were not in custody until Archie alerted giving Officer Johns probable cause to search the vehicle. Accordingly, any questions asked by Officer Johns prior to the alert did not constitute custodial interrogation and no *Miranda* warnings were required. To the extent that Officer Johns asked either Defendant any questions after the dog alert, the Defendants were then in custody and *Miranda* warnings needed to be provided before any such questioning. Based on the current record, the only such questions asked by Officer Johns after he began the vehicle search dealt with inquiring as to the contents of the two boxes [Tr. 27 ll 3-13] and possibly asking the defendants if they had knowledge about the money located in one of the boxes [Tr. 28 ll 15- 25]. The Court does find and conclude that those limited questions by Officer Johns and responses by Defendants should be suppressed.

### b. Lincoln Stop

#### 1. Officer Hudec's traffic stop of the pickup

Based on the legal authority set forth above, the evidence showed that Officer Hudec stopped the pickup driven by Defendant Le because he had probable cause to believe that a traffic violation had occurred. Officer Hudec initiated the traffic stop because he believed that the distance between the two vehicles was not a reasonable and prudent driving distance for safe driving. This was a violation of Neb. Rev. Stat. § 60-6, 140(1) ("The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, and such driver shall have due regard for the speed of such vehicles and the traffic upon and the condition of the roadway.") Although

the Nebraska statute does not include a specific required distance between vehicles and there is a subjective nature to the violation, that does not impact the legality of the traffic stop. *See State v. Draganescu*, 755 N.W.2d 57, 73-74 (Neb. 2008) (holding that because the evidence showed the officer had probable cause to believe that a violation of Neb. Rev. Stat. § 60-6, 140(1) had occurred, the traffic stop was objectively reasonable). In addition to observing the vehicle's following distance. Officer Hudec used an objective measure of the distance between the two vehicles. Officer Hudec used a stopwatch to determine that Le's vehicle was maintaining less than three seconds between the truck in front of him. The Court concludes that the traffic violation provided sufficient probable cause for the stop by Officer Hudec.

### 2. Officer Hudec's extension of the traffic stop

Defendants Nguyen and Le argue that Officer Hudec unreasonably extended the Lincoln stop and unlawfully detained the defendants in order to conduct a canine sniff of the exterior of the vehicle. The Court first addresses whether Officer Hudec had reasonable suspicion of criminal activity to justify the extension of the traffic stop to conduct a K-9 search of the exterior of the vehicle. Officer Hudec relied on the following circumstances as the basis for his reasonable suspicion: (1) religious paraphernalia (cross) hanging from the rearview mirror; (2) 4-5 cell phones in the center console area and Nguyen holding a cell phone and recording the interaction; (3)Le's explanation that the multiple cell phones were used for gaming did not seem legitimate; (4) limited amount of luggage inconsistent with a lengthy trip; (5) the drive from the west coast to the east coast (Washington to New Hampshire) was not cost-effective in Hudec's view; (6) the empty trailer secured with expensive locks; and (7) the information that Hudec received that Le had been dishonest about his arrest history given that Le recently had been arrested in Iowa for narcotics charges. Without factor (7), the question as to whether Hudec had reasonable suspicion of criminal

activity would be close. The information about Le's dishonesty about his criminal history and recent arrest on drug charges significantly bolsters the reasonable suspicion basis. Officer Hudec was releasing Le to proceed on his travels at the conclusion of the traffic violation enforcement until he received the criminal history information. Upon receipt of this additional information, Officer Hudec then detained Le so the K-9 search could occur.

An officer may not unduly prolong a traffic stop in order to wait for a K-9 unit to arrive. *Rodriquez v. United States*, 575 U.S. 348, 355 (2015). The key question is whether the traffic stop is "prolonged beyond the time reasonably required to complete [the officer's] mission" in a way that "measurably extend[s] the duration of the stop." *Id.* There is no evidence that Officer Hudec did so in this case. As Hudec was completing the enforcement action (warning given), Sergeant Mayo had arrived with his K-9 ("Bolt"). Although Hudec had advised Le that he was free to leave upon issuance of the warning, he then changed course and detained Le and Nguyen upon learning of Le's recent arrest history. The situations encountered by law enforcement during a traffic stop are dynamic and new information can be learned throughout the stop that can lead to reasonable suspicion of criminal activity. An officer is not required to ignore relevant information just because it arrives as the traffic stop nears completion. The K-9 sniff by Bolt occurred on the heels of Officer Hudec learning of Le's criminal history and Hudec's resulting decision to detain both Defendants while a K-9 search was performed.

### 3. The canine sniff of the vehicle

Sergeant Mayo established that both he and K-9 Bolt were certified at the time of the Lincoln traffic stop. He further described the free air sniff of the vehicle conducted by Bolt and the alert Bolt gave to the presence of drugs. Although a portion of the K-9 search was captured on Officer Hudec's vehicle's video, the alert by Bolt cannot be seen due to the positioning of the

vehicles. Sergeant Mayo is certified as Bolt's handler and is familiar with how Bolt expresses an alert based on his two plus years of experience with Bolt. The testimony of Sergeant Mayo established that Bolt alerted to the trailer on the passenger side near the trailer hitch by going into a sitting position. Defendants contend that Bolt was distracted, even stopping to urinate, during the search. The Court does not find this canine behavior to nullify the subsequent alert by Bolt. That alert then gave the officers probable cause to search the trailer and the vehicle and any packages or internal locations where contraband could have been secreted. A THC vape pen was found in luggage in the vehicle and banded United States currency was found in a bank bag in the vehicle. The K-9 sniff did not violate defendants' Fourth Amendment rights. The court declines to suppress those items based on the developed record.

### 4. *Miranda* issue

Defendants contend that Officer Hudec's questions to Defendant Le after the K-9 search was completed should be suppressed as Le had not been given his *Miranda* rights. The Government argues that those questions should not be suppressed as they were part of the enforcement action resulting in Hudec issuing Le a criminal citation for possession of the THC cartridge. The Court finds that Hudec placed Le into custody when he told him that he was not free to leave the scene right before the K-9 search occurred. A suspect is in custody when "there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). Although Officer Hudec had not formally arrested Le, he had substantially restricted his movement by detaining him just as if he had been arrested. As a result, Officer Hudec should have advised Le of his *Miranda* rights before questioning Le about the THC cartridge and Le's statements about the THC cartridge should be suppressed.

### III. REPORT AND RECOMMENDATION

IT IS RESPECTFULLY RECOMMENDED that Defendant Le and Defendant Nguyen's Motion to Suppress Evidence [104] and [105] should be DENIED IN PART AND GRANTED IN PART as more fully set forth above.

IT IS ORDERED that the parties have until **November 23, 2020** to file written objections to the Report and Recommendation, pursuant to *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Wade for Robinson v. Callahan*, 976 F. Supp. 1269, 1276 (E.D. Mo. 1997). Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. *See* Fed. R. Civ. P. 72; *Thompson*, 897 F.2d at 357. Failure to timely file objections may constitute a waiver of the party's right to appeal questions of fact. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994); *Halpin v. Shalala*, 999 F.2d 342, 345 & n.1, 346 (8th Cir. 1993); *Thompson*, 897 F.2d at 357.

IT IS SO ORDERED.

Dated November 16, 2020.

Helen C. Adams
Chief U.S. Magistrate Judge